Jimmy HALEY, Plaintiff/Appellant,

v.

**DYERSBURG FABRICS, INC.,**
Defendant/Appellee.

Supreme Court of Tennessee,
at Jackson.

May 4, 1987.

John W. Price, Dyersburg, for plaintiff/appellant.

C. Phillip Bivens, Dyersburg, for defendant/appellee.

OPINION

HARBISON, Justice.

Appellant sustained a serious cut on the palm of his left hand in the course and scope of his employment by appellee on April 30, 1984. He was paid temporary total disability benefits for nine months, until February 1985. Most of his medical expenses during that time were also paid by the employer. There is no question of compensability.

Subsequent to the accident, however, appellant suffered severe constriction of movement of the fingers in his left hand and developed what is referred to by one of the examining physicians as a "claw" hand, so that he has little flexion or movement in most of the fingers on his left hand. There is no history of any intervening or subsequent accident. At the time of the trial in March 1986 the left hand was severely impaired and almost useless to the employee.

Appellant was about forty years old at the time of the accident, in apparent good health, and had worked for appellee since 1963 or 1964. Although he had sustained some industrial injuries to other parts of his body during that period of time, there was no record of prior injury to his left hand. He admitted also having some non-work-related injury to other parts of his body, but denied knowledge of any previous serious injury to the left hand before experiencing the accident out of which the present case arises on April 30, 1984.

On that date appellant sustained a long laceration to the palm of his left hand, reaching from the base of his fingers to the base of the thumb and almost to the wrist. He was taken to the Campbell Clinic in Memphis, and surgery was performed on that same day by Dr. Phillip Eugene Wright II, an orthopedic specialist. At the time of surgery Dr. Wright noted old scar tissue at the base of the fingers and near the wrist, indicating to him that appellant had sustained a previous injury to those areas of his left hand, but he found no evidence of recent injury to the nerves or tendons or to underlying tissue. He sutured the fresh cut, and he or his associates

followed appellant throughout the remainder of the year. His hand was placed in a rigid cast for some time and thereafter in a non-rigid brace.

Appellant experienced severe pain and considerable swelling following the injury, and toward the end of 1984 he began to develop the "claw" condition above referred to. There seems to be no question in the record but that that condition is permanent and that it represents a severe impairment of the use of the left hand, approaching total loss of use of the member.

Nevertheless, Dr. Wright was of the opinion that the type of cut which Mr. Haley suffered on April 30, 1984, should not ordinarily result in a claw hand, and he testified that the condition could have been the result of improper treatment by the patient, such as soaking of the hand contrary to instructions, or that it could in some degree be attributed to the previous injuries which had resulted in scarring.

It appears without contradiction or contrary inference that this clawed condition did not exist prior to the April 30, 1984 accident and the resulting compensable injury.

The trial judge dismissed the claim of appellant insofar as he sought an award for permanent partial disability to his left hand or arm, and when requested to make findings of fact and conclusions of law he stated:

"That Dr. Wright expressed the opinion that plaintiff had suffered no permanent disability as a result of said injury."

This is not precisely what Dr. Wright stated, nor do we think it represents a fair inference from this record. Dr. Wright testified as follows:

"Q. ... Doctor, in your opinion, and to a degree of medical certainty, do you feel that Mr. Haley has any permanent disability as a result of the laceration he received to the fatty and skin tissues of the hand on April 30th?

"A. Aside from the scar on the palm, which he does have, I would think there would be no significant permanent physi-

cal impairment related to that injury *directly.*" (Emphasis added).

Earlier, in attempting to explain the development of a claw hand, Dr. Wright had stated on direct examination:

"Q. Okay. Did you have any feeling as to what had caused his hand to be clenched?

"A. It appeared that, for whatever reasons, possibly due to pain and swelling and inability to move the fingers because of the pain, that the fingers had been held in one position so long that the joints had gotten stiff in those positions."

It will be noted that the doctor did not believe that the clawed or clenched condition of the left hand was "directly" related to the laceration, but in our opinion there can be no question from his deposition that the previous underlying condition, which had certainly not caused any such impairment or disability, must have been aggravated or exacerbated by the severe cut which he did have or else the subsequent rigidity of the hand resulted from the cut, the surgery and the curative treatment. The claimant testified that his hand had to be rigid for a long time after surgery, and that he experienced extreme swelling and pain with red streaks from the wound leading up his left arm. He sought some help from a local physician who was not called as a witness, so that it is not established to what degree or extent there may have been infection from the wound. Dr. Wright testified that infection could have caused the clenched condition.

■ There is no history of any subsequent injury or accident, work-related or otherwise, which could have caused this condition to an active laborer. In our opinion, Dr. Wright's testimony does not afford any material evidence to support the conclusion that there was no causal connection between the accident and the subsequent permanent disability of the hand and arm.

Appellant was examined by another orthopedic specialist, Dr. Donald Henard, who first saw him on January 15, 1985, some eight and one-half months after the accident and after the clenched or clawed condition had developed. Based upon the

history given him, he had no hesitation in stating that the condition was consistent with appellant's history. He found restricted motion and decreased sensation in the hand which was indicative of a cut nerve. His diagnosis was that of "a post-operative status repair tendons and nerves of the patient's left hand and wrist."

Dr. Henard did not find other medical or surgical treatment to be indicated. He expressed the opinion that appellant had a 90% permanent partial impairment of the left hand, and 81% permanent physical impairment of the left upper extremity, both scheduled injuries.

■ Appellee insists that the testimony of Dr. Henard was not admissible on the issue of permanent partial disability because he was "a non-treating physician" and his testimony was "based upon subjective complaints alone." In support of this proposition appellee cites *Reynolds v. Liberty Mutual Insurance Co.*, 496 S.W.2d 890 (Tenn.1973).

In the case of *Cates v. Better-Bilt Aluminum Products Co.*, 607 S.W.2d 476, 478 (Tenn.1980), this Court had occasion to comment that since 1967 the rule stated in *Reynolds, supra,* has not been the law and that *Reynolds* either was incorrectly decided or that a controlling statute had not been called to the attention of the Court in that case.

> The statute, T.C.A. § 24–7–114, provides: "In the trial of any civil suit, there shall be received in evidence if offered on behalf of any party thereto, opinions as to medical findings as a result of treatment or examination of the party, whether such opinions are based on subjective or objective findings, provided such opinions are those of persons otherwise qualified as medical experts. It is declared to be the intent of this section that medical opinions based on subjective findings are no longer to be excluded from evidence whether the opinion is from the treating expert or an expert called in for purposes of examination and evaluation."

The only reason given by the trial judge for disregarding the testimony of Dr. Henard was that he did not see appellant until "approximately one year after the injury." His decision may have been influenced by the insistence of appellee on the rule in *Reynolds, supra.*

This case arose before July 1, 1985, so that it is governed on review by the material evidence rule. T.C.A. § 50–6–225(e).

Although Dr. Wright's deposition affords material evidence that appellant's disability was not due "directly" to the laceration of his left hand, it certainly does not preclude its being due indirectly to the resulting medical treatment and rigidity of the members, to infection, or to aggravation of some previous condition which had resulted in the old scar tissue which he found at surgery. There is no indication in the record that the clenched or clawed condition of the left hand developed spontaneously, *or that it would have developed without* the industrial accident involved here and the subsequent surgery and treatment made necessary thereby.

The judgment of the trial court is reversed and this cause is remanded for a new trial on the evidence already adduced and upon any other evidence which the parties may wish to introduce. We are not satisfied that upon this record proper consideration has been given to the medical testimony. In our opinion there is no showing that anything other than the industrial accident of April 30, 1984 and the incidental treatment therefrom could have resulted in the condition presented by this employee at trial.

It is the duty of the courts to see that injured workers receive the just compensation to which they are entitled. This apparently active, productive worker has obviously sustained a significant permanent injury following an admittedly compensable accident, without any demonstration of any independent intervening cause which would relieve the employer of responsibility therefor. Nor is there evidence that the natural progression of a diseased condition, wholly apart from the industrial accident, could have caused the disability presented at trial. The trial judge made no finding of malingering or exaggeration of the claim

nor any suggestion that any of the witnesses lacked credibility.

The judgment of the trial court is reversed and the cause is remanded for a new trial and for further consideration and findings, at the cost of appellee.

BROCK, C.J., and FONES, COOPER and DROWOTA, JJ., concur.